UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY MITCHELL,

    Plaintiff,

v.

WASHTENAW COUNTY,
WASHTENAW FAMILY COURTS,
CRIME VICTIMS ASSISTANCE
PROJECT, EMILY MILLER,
AMANDA WOODS, DARLENE
O'BRIEN, MARIE WOODS, and
MICHAEL WOODS,

    Defendants.

Case No. 22-10224
Honorable Laurie J. Michelson
Magistrate Judge Jonathan J.C. Grey

**ORDER GRANTING APPLICATION TO PROCEED IN FORMA PAUPERIS [2], DISMISSING COMPLAINT [1], AND DENYING APPOINTMENT OF COUNSEL AS MOOT [9]**

Gary Mitchell brought this suit because he believes he has been wrongfully deprived of his parental rights as a result of a conspiracy between Amanda Woods (his ex-wife), Marie and Michael Woods (Amanda's parents), Emily Miller (Amanda's attorney), and Judge Darlene O'Brien (who ruled on Mitchell and Amanda's underlying parental rights' dispute). Mitchell also sued Miller's employer, the Crime Victims Assistance Project, Washtenaw County, and Washtenaw Family Courts. Mitchell asserts claims under 42 U.S.C. § 1983 for violations of his First Amendment right to redress the court and Fourteenth Amendment rights to due process and equal

protection.[1] He also brings a state-law, intentional-infliction-of-emotional-distress claim.

Mitchell has requested to proceed without prepayment of fees or costs. (ECF No. 2.) Under 28 U.S.C. § 1915(a)(1), the Court may authorize commencement of an action without prepayment if the plaintiff demonstrates they cannot pay such fees. Mitchell is currently incarcerated and has less than $150 in his prisoner fund account. (ECF No. 2-1, PageID.51.) He states that he earns less than $80 a month, which includes his veterans pension benefits. (ECF No. 2, PageID.47.) The Court finds that Mitchell is thus entitled to proceed in forma pauperis and grants his application to proceed without prepayment of the filing fee and costs. *See* 28 U.S.C. § 1915(a)(1).

But when a Court grants that right, it has a responsibility: screen the complaint and decide whether it "fails to state a claim on which relief may be granted" or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see also McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997). Moreover, although a pro se litigant is entitled to a liberal construction of his pleadings and filings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] Mitchell also brings claims under the Fifth and Eighth Amendments. But those Amendments are limited to criminal proceedings and punishment (other than possibly a takings claim). Mitchell is challenging conduct from before and during a parental-rights proceeding, so those Amendments are not applicable here.

The Court has completed that screening, and, for the reasons that follow, the Court will dismiss Mitchell's complaint.

I.

Mitchell cannot bring the constitutional claims he asserts against his former family members, Amanda Woods, Marie Woods, and Michael Woods, because they are not state actors.

Section 1983 only provides relief against a "person acting under color of state law[.]" Thus, "[o]nly claims against state actors are eligible for relief under the statute." *See Howell v. Father Maloney's Boys' Haven, Inc.*, 976 F.3d 750, 752 (6th Cir. 2020) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982)). Further, not only are § 1983 claims limited in this way, but many constitutional amendments also have a similar state-action limitation outlined in their text. *See* U.S. Const. amend. I (specifying "Congress shall make no law" abridging the right to petition the government for a redress of grievances); U.S. Const. amend. XIV, §1 (specifying that no "state" shall deprive any person of life, liberty, or property, without due process of law).

None of Amanda, Marie, and Michael are state actors, and Mitchell does not allege any facts that would support a finding that these defendants acted under the color of state law. For an individual who is not a state official to be considered a state actor, their conduct should be "fairly attributable to the State." *See Howell*, 976 F.3d at 752 (quoting *Filarsky v. Delia*, 566 U.S. 277, 283 (2012)). Mitchell's allegations do not plausibly show that Amanda, Marie, and Michael acted in a way that is

3

attributable to the State. Many of the allegations involve actions the Woods took in the context of their private relationship with Mitchell—statements made to Mitchell, an assault of Mitchell and his son outside of Mitchell's apartment, and parental kidnapping. (ECF No. 6, PageID.12–16.) These family disputes, while distressing and perhaps tangentially involving state officials, are not attributable to the State. Even the actions Amanda allegedly took in the context of court proceedings, such as lying to the court in an effort to get a protective order or lying in her petition for divorce, cannot be "fairly attribute[ed] to the State." *See Howell*, 976 F.3d at 752. There is no alleged connection between Amanda's activities in court and any state official such that "there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *See Siefert v. Hamilton Cnty.*, 951 F.3d 753, 759–760 (6th Cir. 2020) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). If anything, the heart of Mitchell's complaint against the Woods quite clearly shows this to be a private dispute among former family members. So any constitutional claims brought against Amanda, Marie, or Michael Woods under 42 U.S.C. § 1983 are dismissed with prejudice.

## II.

Mitchell also sues Emily Miller, an attorney working for the Crime Victims Assistance Project who represented Amanda in the underlying custody proceedings. The Crime Victims Assistance Project is a statewide program that provides legal help to individuals who experienced domestic violence. *See* Crime Victims Legal

Assistance Project, https://perma.cc/Y92M-RE9V. The Project is funded by a Victims of Crime Act of 1984 grant from the Michigan Department of Health and Human Services to the Michigan Advocacy Program. *Id.*

Mitchell makes a host of allegations against Miller. Mitchell alleges that, based on Miller's advice, Amanda falsely claimed that she had been the victim of three incidents of domestic violence when filing for divorce from Mitchell. (ECF No. 6, PageID.17.) He also states that "despite [Amanda] admitting she was/is a liar," Miller "continuously requested and received" protective orders from the court. (*Id.* at PageID.18.) He alleges that Miller lied to the court by representing that Amanda was not a drug user. (*Id.* at Page19.) According to Mitchell, in arguing against Mitchell's request that Amanda be routinely tested for drug use and be required to check-in with mental health workers, Miller stated that it would be inconvenient for Amanda to do so. (*Id.*) Mitchell states that Miller has also requested or threatened to request the court for monetary sanctions to deter Mitchell from asking the court for redress. (*Id.*) He also accuses Miller of being a "man hater" because her motions on behalf of Amanda discuss how male abusers often use the courts to further their abuse of women. (*Id.* at PageID.20.) Mitchell alleges that Miller has "never advocated" against women—only men. (*Id.* at PageID.22.)

Mitchell cannot use the federal courts to air his grievances over state court proceedings involving domestic relations issues. These allegations do not amount to a constitutional claim. Instead, they detail Miller's zealous advocacy on behalf of her clients. Even if that advocacy somehow prejudices Mitchell, it does not amount to a

claim against Miller. Miller represented Amanda, not Mitchell or the State. So by asking the state court for monetary sanctions or by stating that certain restrictions on Amanda would be inconvenient, for example, Miller was not violating any of Mitchell's constitutional rights. Miller was merely representing Amanda's interests. Therefore, many of these allegations do not support any claim against Miller.

Moreover, as explained previously, Miller must be a state actor for Mitchell to bring a § 1983 action against her. Mitchell has made some factual allegations in support of Miller being a state actor. Namely, that Miller is employed by the Crime Victims Legal Assistance Project, which is funded by a state statute. While state funding can be probative of state action, funding alone cannot transform Miller's actions into state action. *See Rendell-Baker v. Kohn*, 457 U.S. 830, 840 (1982) (comparing entities that receive funding from the government to private corporations whose business depends on government contracts).

Most instructive is the Supreme Court's opinion in *Polk Cnty. v. Dodson*, 454 U.S. 312 (1981). There, the Court held that public defenders are not state actors despite being funded by the State because they are "[h]eld to the same standards of competence and integrity as a private lawyer" and work "under canons of professional responsibility that mandate [sic] exercise of independent judgment on behalf of the client." *See Polk Cnty.*, 454 U.S. at 321. In other words, though public defenders are funded and appointed by the state, their role as advocates for their clients requires that they operate independently from it. The same is true here. There is also no reason for the Court to think that the State has significant control or regulation over

6

Miller's representation of clients. So the Court will not assume that the State, in its efforts to provide resources for domestic violence victims, asserts control over these private disputes.

Further, Mitchell's allegations focus on Miller's actions as Amanda's lawyer. They are not about Miller performing non-legal functions (such as hiring or firing) or administrative functions. So the Court finds that Miller, when performing "a lawyer's traditional functions," was not acting under color of state law. *See Polk Cnty.*, 454 U.S. at 325. So the constitutional claims against Miller, which are the only claims Mitchell alleges against her, will be dismissed with prejudice.

With Miller's dismissal, the Crime Victims Assistance Project will also be dismissed. Mitchell has merely alleged that the Project is Miller's direct supervisor. (ECF No. 6, PageID.11.) He has made no other factual allegations detailing the Project's unconstitutional conduct. Seeing as Miller could not have violated the Constitution in the way Mitchell alleges, no liability can attach to the Project either.

The Court notes, however, that it makes no finding as to whether the Crime Victims Assistance Project is a state actor. It merely finds that because Mitchell's claims against the Project are wholly based on its employment relationship with Miller, and Miller is now dismissed from the case, Mitchell has not plausibly alleged any claim against the Project. So the Project is also dismissed.

### III.

Having streamlined this § 1983 action to only state actors, the Court turns to Mitchell's claims against Judge Darlene O'Brien. According to Mitchell, Judge

O'Brien entered an order suspending his parental rights for five years and has not reinstated those rights despite his multiple motions. (ECF No. 6, PageID.18, 22.) Mitchell also states that he has requested to be present at hearings before Judge O'Brien via video or telephone because he is currently incarcerated. (*Id.* at PageID.19.) Judge O'Brien has not granted these requests. (*Id.* at PageID.20.)

Though there are cognizable Fourteenth Amendment protections for parents when their parental rights are revoked, *see Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27 (1981), *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008), that does not mean this Court is the proper forum for adjudicating Mitchell's claim. Because the Court cannot award the relief Mitchell seeks to remedy the alleged constitutional harm, his claims against Judge O'Brien will be dismissed.

Start with Mitchell's claim for monetary relief. Because Judge O'Brien's actions were taken pursuant to her judicial responsibilities, she is absolutely immune from a suit for money damages. *See, e.g.*, *Bright v. Gallia Cnty., Ohio*, 753 F.3d 639, 648–49 (6th Cir. 2014). So any claim for money damages against Judge O'Brien is dismissed.

But Mitchell also asks this Court for equitable relief. Specifically, Mitchell requests that he be awarded 50% legal custody of his son, restoration of his parental rights, and recusal of Judge O'Brien from the underlying parental rights' suit. (ECF No. 6, PageID.24.)

In general, this Court does not have subject-matter jurisdiction over issues of custody or parental rights. *See Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001)

(citing *Ankenbrandt v. Richards*, 504 U.S. 689 (1992)). Indeed, state courts are traditionally the only forums for family-law disputes. So if Mitchell wishes to change the status of his parental rights, he must go to a state court to do so.

Further, the principles established by *Rooker-Feldman* would also bar this Court from granting the equitable relief Mitchell requests. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) ("The Rooker-Feldman doctrine, we hold today, is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). According to the complaint, Judge O'Brien has already issued an order suspending Mitchell's parenting rights. (ECF No. 6, PageID.18.) So to grant Mitchell the relief he asks for, this Court would have to set aside the state court's judgment. It is barred from doing so. *Cf. Pittman v. Cuyahoga Cnty. Dept. of Children and Family Servs.*, 241 F. App'x 285, 288 (6th Cir. 2007) (noting that since plaintiff does not seek custody or a reversal of the state court's custody decision, the claims are not barred by *Rooker-Feldman*). In other words, Mitchell can challenge and receive compensation for unconstitutional conduct leading up to the state court's decision, but he may not ask this Court to award custody or change the status of his parental rights contrary to the state court's order. *See Kovacic v. Cuyahoga Cnty. Dep't of Children and Family Servs.*, 606 F.3d 301, 310 (6th Cir. 2010). If Mitchell wishes to reinstate his parental rights, he must either appeal the state-court judgment or ask

9

the trial court to reconsider. The remedy is not to ask a federal court to reverse the state court.

Therefore, as this Court can neither award damages against Judge O'Brien nor order that she change or revoke the order regarding Mitchell's parental rights, all that is left is Miller's request for process (e.g., to appear at a hearing via video or telephone). But providing that process at this point—after the state court entered an order suspending Mitchell's parenting rights—would have no "real impact on the legal interests of the parties[.]" *Memphis A. Philip Randolph Inst. v. Hargett*, 2 F.4th 548, 559 (6th Cir. 2021). So the Court will dismiss Judge O'Brien from the lawsuit as the claims against her are moot.

Mitchell also sues the Washtenaw Family Courts. As his only allegation against the court system is that it employs Judge O'Brien (ECF No. 6, PageID.11), the Washtenaw Family Courts will also be dismissed from the action.

## IV.

Mitchell has not plausibly pled a claim against Washtenaw County either. Mitchell's complaint alleges that Washtenaw County is liable for the constitutional harms against him because it is the "direct supervisor" of some of the individual defendants. But local governments cannot be sued for constitutional violations based solely on injuries inflicted by their employees or agents. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

10

government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. Mitchell does not allege that the harms against him were the result of any Washtenaw County policy. And it is not sufficient for Mitchell to allege that Washtenaw County is liable merely because it supervised some of the individual defendants. So the claims against Washtenaw County will be dismissed.

## V.

Finally, Mitchell brings an intentional-infliction-of-emotional-distress (IIED) claim. As this claim is rooted in state law, this Court only has jurisdiction over it if the Court also maintains jurisdiction over either a federal-law claim or a claim involving parties from different states. Having dismissed all the federal claims, the Court does not have jurisdiction over Mitchell's IIED claim by way of having jurisdiction over related federal claims. *See* 28 U.S.C. § 1367. And since all Defendants are citizens of Michigan (ECF No. 6, PageID.7–9), and Mitchell is also a citizen of Michigan, the parties are not diverse. So the Court does not retain jurisdiction that way either. The IIED claim is therefore dismissed for lack of jurisdiction.

## VI.

In sum, Amanda, Marie, and Michael Woods are not state actors and cannot be sued under § 1983. The same is true for Miller. Mitchell's only allegations against the Washtenaw Family Courts, the Crime Victims Assistance Project, and Washtenaw County are that they are employers of the individual defendants. But since no claim survives against the individual defendants, and an employment

11

relationship is not enough to sustain a claim against those entities, they are dismissed as well. So these constitutional claims are DISMISSED WITH PREJUDICE.

Mitchell's claims against Judge O'Brien are dismissed as moot as this Court cannot award any relief Mitchell requested. And his state-law IIED claim is dismissed for lack of jurisdiction. The claims dismissed for want of jurisdiction are DISMISSED WITHOUT PREJUDICE.

As all the claims in this action have been dismissed, Mitchell's motion to appoint him counsel in this case is DENIED AS MOOT. (ECF No. 9.)

A separate judgment will follow.

SO ORDERED.

Dated: July 13, 2022

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE